# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| THOMAS P. WIREMAN, JR., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW SAUL[1], <br> Acting Commissioner of Social Security, <br><br> Defendant. | 2:18-cv-00038-APG-CLB <br><br><br> **REPORT AND RECOMMENDATION** <br> **OF U.S. MAGISTRATE JUDGE**[2] |

This case involves the judicial review of an administrative action by the Commissioner of Social Security ("Commissioner") denying Thomas Wireman, Jr.'s ("Wireman") application for disability insurance benefits pursuant to Title II of the Social Security Act. Currently pending before the Court is Wireman's motion for reversal or remand (ECF No. 20). In this motion, Wireman seeks the reversal of the administrative decision and remand for an award of benefits. (*Id.*) The Commissioner filed a response and cross-motion to affirm, (ECF No. 23/25), and Wireman replied (ECF No. 26). For the reasons set forth herein, the Court recommends that Wireman's motion for remand, (ECF No. 20), be denied, and the Commissioner's cross-motion to affirm, (ECF No. 23), be granted.

## I.   STANDARDS OF REVIEW

### A.   Judicial Standard of Review

This Court's review of administrative decisions in social security disability benefits cases is governed by 42 U.S.C. § 405(g). *See Akopyan v. Barnhart*, 296 F.3d 852, 854

---

[1]   Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

[2]   This Report and Recommendation is made to the Honorable Andrew P. Gordon, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

(9th Cir. 2002). Section 405(g) provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action ... brought in the district court of the United States for the judicial district in which the plaintiff resides." The Court may enter, "upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.*

The Court must affirm an Administrative Law Judge's ("ALJ") determination if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *see also* 42 U.S.C. § 405(g) ("findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (internal quotation marks and citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)); *see also Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005).

To determine whether substantial evidence exists, the Court must look at the administrative record as a whole, weighing both the evidence that supports and undermines the ALJ's decision. *Orteza v. Shalala*, 50 F.3d 748, 749 (9th Cir. 1995) (citation omitted). Under the substantial evidence test, a court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "However, if evidence is susceptible of more than one rational interpretation, the decision of the ALJ must be upheld." *Shalala,* 50 F.3d at 749 (citation omitted). The ALJ alone is responsible for determining credibility and for resolving ambiguities. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).

It is incumbent on the ALJ to make specific findings so that the court does not speculate as to the basis of the findings when determining if substantial evidence supports the Commissioner's decision. The ALJ's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision. *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990).

### B.   Standards Applicable to Disability Evaluation Process

The individual seeking disability benefits bears the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected ... to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). More specifically, the individual must provide "specific medical evidence" in support of her claim for disability. *See* 20 C.F.R. § 404.1514. If the individual establishes an inability to perform her prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998).

The first step requires the ALJ to determine whether the individual is currently engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(b), 416.920(b). SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities, usually for pay or profit. 20 C.F.R. §§ 404.1572(a)-(b), 416.972(a)-(b). If the individual is currently engaging in SGA, then a finding of not disabled is made. If the individual is not engaging in SGA, then the analysis proceeds to the second step.

The second step addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits her from performing basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or

combination of impairments is not severe when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Rulings ("SSRs") 85-28 and 96-3p.1  If the individual does not have a severe medically determinable impairment or combination of impairments, then a finding of not disabled is made.  If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to the third step.

The third step requires the ALJ to determine whether the individual's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926.  If the individual's impairment or combination of impairments meets or equals the criteria of a listing and meets the duration requirement (20 C.F.R. §§ 404.1509, 416.909), then a finding of disabled is made. 20 C.F.R. §§ 404.1520(h), 416.920(h).  If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to the next step.

Prior to considering step four, the ALJ must first determine the individual's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e).  The RFC is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. SSR 96-8p.  In making this finding, the ALJ must consider all of the symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529 and 416.929; SSRs 96-4p, 96-7p. To the extent that objective medical evidence does not substantiate statements about the intensity, persistence, or functionally-limiting effects of pain or other symptoms, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.  The ALJ must also consider opinion evidence in

accordance with the requirements of 20 C.F.R. §§ 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.

After making the RFC determination, the ALJ must then turn to step four in order to determine whether the individual has the RFC to perform her past relevant work ("PRW"). 20 C.F.R. §§ 404.1520(f), 416.920(f). PRW means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the individual to learn the job and performed at SGA. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. If the individual has the RFC to perform her past work, then a finding of not disabled is made. If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to the fifth and last step.

The fifth and final step requires the ALJ to determine whether the individual is able to do any other work considering her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g). If she is able to do other work, then a finding of not disabled is made. Although the individual generally continues to bear the burden of proving disability at this step, a limited evidentiary burden shifts to the Commissioner. The Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the individual can do. *Lockwood v. Comm'r, Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).

**II.    CASE BACKGROUND**

A.    Procedural History

Wireman applied for disability insurance benefits ("DIB") on April 8, 2014 with an alleged disability onset date of March 9, 2014. (Administrative Record ("AR") 15, 71.) The application was denied initially (AR 71-84), and on reconsideration. (AR 88-114.) Wireman subsequently requested an administrative hearing. (AR 15.)

Wireman appeared at two hearings before an Administrative Law Judge ("ALJ") on July 28, 2016 and April 11, 2017. (AR 39-53, 54-70.) A vocational expert ("VE"), also

appeared at the hearing held on April 11, 2017. (AR 54-70.) The ALJ issued a written decision on July 31, 2017, finding that Wireman was not disabled because he was capable of performing past relevant work as a customer service representative and that this work does not require the performance of work-related activities precluded by his RFC. (AR 25-26.) Wireman appealed, and the Appeals Council denied review on November 9, 2017. (AR 1-6.) Accordingly, the ALJ's decision became the final decision of the Commissioner. Having exhausted all administrative remedies, Wireman filed a complaint for judicial review on August 22, 2017 (ECF No. 1).

### B.  ALJ's Decision

In the written decision, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520 and 416.920. (AR 15-26.) Ultimately, the ALJ disagreed that Wireman had been disabled from March 9, 2014, the alleged onset date, through the date of the decision. (*Id.* at 26.) The ALJ held that Wireman was capable of performing past relevant work as a customer service representative, which does not require the performance of work-related activities precluded by his RFC. (*Id.* at 25.)

In making this determination, the ALJ started at step one. Here, the ALJ found Wireman had not engaged in substantial gainful activity since March 9, 2014, the alleged onset date. (*Id.* at 17.) At step two, the ALJ found Wireman had the following severe impairment: diabetes mellitus with neuropathy. (*Id.* at 17-20.) At step three, the ALJ found Wireman did not have an impairment or combination of impairments that either met or medically equaled the severity of those impairments listed in 20 C.F.R. Part 404, Subpart P, Appx. 1; 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. (*Id.* at 20.)

Next, the ALJ determined Wireman had an RFC to perform sedentary work, as defined by 20 C.F.R. § 404.1567(a) with the following restrictions: no more than occasional reaching with the left upper extremity; unable to crawl; and unable to climb ladders, ropes or scaffolds. (*Id.* at 20-25.)

The ALJ found Wireman's allegations concerning the intensity, persistence and limiting effects of his symptoms were less than fully consistent with the evidence of record.

(*Id.* at 23.)  In reaching this conclusion, the ALJ reviewed and discussed the objective medical evidence, medical opinions, Wireman's hearing testimony, and the March 24, 2014 Disability Rating Decision from the Department of Veterans Affairs. (*Id.* at 23-25.) Specifically, the ALJ stated that Wireman's symptoms were not so disabling as to completely rule out work-related activity. (*Id.* at 24.)  The ALJ supported his opinion by noting that at the hearing, Wireman testified that he had retinopathy, which made it hard to read, but that the treatment records indicated that Wireman's vision had been stable. (*Id.* at 23.)

The ALJ stated that although the evidence, including multiple EMG studies, did confirm Wireman's claim of disabling neuropathy, the evidence also confirmed he was able to treat his diabetes with the use of medication. (*Id.*)  With proper compliance, Wireman was able to reduce his blood glucose level to 7.1, which was his lowest in a decade. (*Id.*)  Additionally, the ALJ further stated that at times, such as at Wireman's consultative examination, Wireman displayed near-full strength on his left side despite complaints of pain and numbness. (*Id.*)  Moreover, the ALJ found Wireman's brain MRIs were uniformly unremarkable, ruling out a cognitive aspect. (*Id.*)  The ALJ held that combined with Wireman's documented degenerative disc disease, he would likely be reduced to sedentary work with appropriate restrictions, but his symptoms were not so disabling as to completely rule out work-related activity. (*Id.* at 23-24.)

Proceeding to step four, and relying on the testimony of the VE, the ALJ determined Wireman was capable of performing past relevant work as a customer service representative, and this work does not require the performance of work-related activities precluded by Wireman's RFC. (*Id.* at 25.)  Accordingly, the ALJ held Wireman had not been under a disability at any time from March 9, 2014, the alleged onset date, through July 31, 2017, the date of the ALJ's decision, and denied his SSI claim. (*Id.* at 26.)

///

///

///

**III.   ISSUES**

Wireman seeks judicial review of the Commissioner's final decision denying his DIB under Title II of the Social Security Act (ECF No. 20).  Wireman raises the following issues for this Court's review:

1. Whether the ALJ failed to properly weigh the medical opinion evidence before determining Mr. Wireman had no severe mental impairments; and

2. Whether the ALJ failed to properly evaluate Mr. Wireman's subjective allegations.

**IV.   DISCUSSION**

### A.   The ALJ Properly Weighed the Medical Opinion Evidence Before Determining Wireman Had No Severe Mental Impairments

Wireman argues the ALJ improperly addressed the opinion of Wireman's treating board-certified psychiatrist, Dr. Herbert Goldman (ECF No. 20 at 8-14).  Specifically, Wireman alleges "despite the extremely low threshold" required to establish a severe mental impairment, the ALJ found Wireman's medically determinable impairments of depression and anxiety were non-severe. (*Id.* at 9.)  Wireman states the ALJ gave "little weight" to the expert opinions from Dr. Goldman by finding his opinions were inconsistent with the mental status examination findings and other evidence in the treatment records, to which the ALJ gave greater weight. *(Id.)*  Instead, the ALJ gave "partial weight" to the opinions from the non-examining state agency medical consultants. *(Id.)*  Wireman argues the weight of the evidence does not support the ALJ's conclusion that Wireman had no more than a de minimis mental impairment because both Dr. Goldman and the Commissioner's non-examining psychiatrists gave opinions contradicting such a finding. *(Id.* at 14.)  Finally, Wireman argues the ALJ's contradictory finding based on a deficient report from a non-examining psychologist and his lay interpretation of the medical records is not substantial evidence to support the conclusion Wireman had no limitations in his ability to perform basic mental work activities. *(Id.)*

1. Dr. Goldman's Treatment Records and Expert Opinions

The second step, "the severity step," weeds out claimants with minor problems, making them ineligible for disability benefits. *See Buck v. Berryhill,* 869 F.3d 1040, 1048 (9th Cir. 2017) ("Step two is merely a threshold determination meant to screen out weak claims.")  Claimants must have a severe impairment, or combination of impairments, significantly limiting their physical or mental ability to do basic work activities, or they are found not disabled. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).  In making this determination, the ALJ does not consider a claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).  Step two "is not meant to identify the impairments that should be taken into account when determining the [RFC]." *Buck*, 896 F.3d at 1048-49.

A claimant's impairment, or combination of impairments, is not severe if it does not significantly limit their physical or mental ability to do basic work activities.  Basic work activities are defined as the abilities and aptitudes necessary to do most jobs, such as (1) walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and, (6) dealing with changes in a routine work setting. *See* 20 C.F.R. §§ 404.1521, 416.921.

To satisfy step two's requirement of a severe impairment, the claimant must prove the physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. *See* 20 C.F.R. §§ 404.1508, 416.908. "A determination that an impairment(s) is not severe requires a careful evaluation of the medical findings which describe the impairment(s) and an informed judgment about its (their) limiting effects on the individual's physical and mental ability(ies) to perform basic work activities; thus, an assessment of function is inherent in the medical evaluation process itself." SSR 85-28, 1985 WL 56856 at 4 (1985) (Program Policy Statement; Titles II and XVI: Medical Impairments That Are

Not Severe.)[3] The step two inquiry is a de minimis screening device used to dispose of groundless claims. *See Bowen v. Yuckert,* 482 U.S. 137, 153-54 (1987); *see also Webb v. Barnhart,* 433 F.3d 683, 687 (9th Cir. 2005); *Smolen v. Chater,* 80 F.3d 1273, 1290 (9th Cir. 1996). "If a claimant is unable to show that he has a medically severe impairment, he is not eligible for disability benefits." *Bowen,* 482 U.S. at 148.

In evaluating the severity of mental impairments, a special procedure must be followed at each level of administrative review. *See* 20 C.F.R. §§ 404.1520a(a), 416.920a(a). First, the ALJ evaluates a claimant's "pertinent symptoms, signs, and laboratory findings to determine whether" the claimant "has a medically determinable mental impairment(s)." 20 C.F.R. §§ 404.1520a(b), 416.920a(b); *see also* 20 C.F.R. §§ 404.1508, 416.908. The ALJ must also "specify the symptoms, signs, and laboratory findings that substantiate the presence of [each determined] impairment and document [the] findings." 20 C.F.R. §§ 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1).

Rating the degree of functional limitation is a highly individualized process that requires the ALJ to consider all relevant evidence to determine the extent to which a claimant's impairment interferes with their "ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. §§ 404.1520a(c), 416.920a(c). The ALJ uses a point scale to rate four broad functional areas (activities of daily living, social functioning, a concentration category, and episodes of decompensation) and the degree to which the claimant's impairment interferes with each broad functional area. (*Id.*); *see*

---

[3] Social Security Rulings are available on Westlaw. While lacking the force of law, these rulings constitute the Social Security Administration's official interpretations of the statute it administers and of its own regulations. *See Molina v. Astrue,* 674 F.3d 1104, 1114 n.5 (9th Cir. 2012): *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1224 (9th Cir. 2009); *Quang Van Han v. Bowen,* 882 F.2d 1453, 1457 & n.6 (9th Cir. 1989); *see also* 20 C.F.R. § 402.35(b)(1). Social Security Rulings are entitled to some deference as long as consistent with the Social Security Act and regulations. *See Bray,* 554 F.3d at 1224 (concluding that ALJ erred in disregarding SSR 82-41); *Massachi v. Astrue,* 486 F.3d 1149, 1152 n.6 (9th Cir. 2007). These rulings are binding on ALJs. *See Molina,* 674 F.3d at 1114 n.5; *Bray,* 554 F.3d at 1224; *Quang Van Han,* 882 F.2d at 1457 n.6; *Paulson v. Bowen,* 836 F.2d 1249, 1252 n.2 (9th Cir. 1988).

*also Hoopai v. Astrue,* 499 F.3d 1071, 1077-78 (9th Cir. 2007) ("[T]he ALJ is required to rate the degree of functional limitations in four areas . . . The ALJ clearly met this requirement by rating and assessing [claimant's] limitations in each of these four functional areas. The ALJ was not required to make any more specific findings of the claimant's functional limitations.")

Substantial evidence supports the ALJ's determination that Wireman's depression and anxiety were not severe because they caused him no more than a minimal limitation in his ability to function. *See Smolen,* 80 F.3d at 1290 ("An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual[']s ability to work.'") (quoting SSR 85–28, 1985 WL 56856 (1985)).

Wireman cites to Dr. Goldman's opinions as to his symptoms and limitations, as memorialized in Mental Impairment Questionnaires completed on December 12, 2014, April 24, 2015, and February 9, 2017. (ECF No. 20 at 3-4, 6, 14; *see also* AR 2612-16, 2619-23, 4250-54.) However, Goldman's opinions on the Mental Impairment Questionnaires relating to the impact of Wireman's mental impairments on his ability to work consisted primarily of a standardized, check-the-box form, provided by Wireman's attorney, in which Dr. Goldman failed to provide supporting reasoning or clinical findings, despite being instructed to do so. Furthermore, the boxes checked on the Questionnaire forms were not substantiated by Dr. Goldman's progress notes relating to Wireman's alleged mental impairments. (*See* AR 429-34, 2892-93, 2970-72, 3072-75, 3147-49, 3156-59, 3178-80, 3212-15, 3314-17, 3393-98, 4209-10, 4239-42.)

The ALJ considered the four expert opinions that Dr. Goldman provided during the period at issue, giving them little weight. (AR 18-19.) The ALJ permissibly rejected the Questionnaires because they were check-off reports that did not contain any explanation of the bases of their conclusions. *See Crane v. Shalala,* 76 F.3d 251, 253 (9th Cir. 1996); s*ee also Murray v. Heckler,* 722 F.2d 499, 501 (9th Cir.1983) (expressing preference for individualized medical opinions over check-off reports); *Holohan v. Massanari,* 246 F.3d

1195, 1202 (9th Cir.2001) ("[T]he regulations give more weight to opinions that are explained than to those that are not.").

The ALJ found that the assessments were inconsistent with Dr. Goldman's examination records. (AR 19.) As the Commissioner correctly noted, the ALJ spent a considerable amount of time summarizing Dr. Goldman's findings and treatment records. (ECF No. 23 at 7; AR 18-19.) Specifically, the ALJ stated Dr. Goldman's clinic notes found that Wireman was alert and fully oriented with no delusions or hallucinations, Wireman had no suicidal or homicidal ideation, no paranoid ideation or ideas of influence, his speech was relevant and coherent, he was pleasant and cooperative, his affect was appropriate, and he was "high functioning," despite his depressed mood. (AR 29, 431-432; *see also* AR 2892-93, 2971, 3073, 3147, 3157, 3213, 3315, 3396-97.) On May 1 and July 7, 2015, and February 9, 2017, Dr. Goldman noted Wireman's stable mood, euthymic mood, no psychotic symptoms, congruent affect and that Wireman was "doing well on current meds." (AR 3147, 3157, 4369.) On November 9, 2015, during a depression screen, when Dr. Goldman asked Wireman whether he had little interest or pleasure in doing things or whether he was feeling down, depressed, or hopeless, Wireman answered, "not at all" to both questions. (AR 3047.) In fact, Wireman scored zero on the depression screen, which is a negative screening for depression. (*Id.*; *see also* AR 3074.) On a previous depression screening done by Dr. Goldman on December 12, 2014, Wireman scored a 2, which is also a negative screen for depression, noting that he found little interest or pleasure in doing things and felt down, depressed or hopeless "several days." (AR 3213-14.) Dr. Goldman's progress notes on that date indicated that Wireman's mental health treatment plan required only a "level of care one – low intensity." (*Id.* at 3214.)

Furthermore, the ALJ stated Dr. Goldman's assessment of Wireman's functional limitations were inconsistent with the treatment records of another treating physician who also noted normal mental status and were similarly unremarkable. (AR 19; *see also* AR 2703, 2802, 2854, 2857, 2868, 2949, 2995, 3198, 3208, 3287, 3303, 3367.) Wireman

sought a second opinion as to his mental impairment diagnosis from Dr. Anurag Gupta on December 18, 2014. (AR 2782-85.) As the ALJ noted, on March 12, 2015, Dr. Gupta's mental status examination found that Wireman was cooperative, had normal motor activity and speech, appropriate affect, intact thought processes, logical and coherent thought content, no disturbances of perception, fair attention and concentration, full orientation, intact judgment, good impulse control, and no suicidal or homicidal ideation, despite a depressed mood and impaired insight. (AR 19, 2778-79.) Dr. Gupta found Wireman's current Global Assessment of Functioning (GAF) score was 68, a low to moderate severity of depression. (*Id.* at 2778.) The GAF score improved from Dr. Gupta's January 29, 2015 assessment, when he found a GAF score of 66, even with a normal mental status. (AR 2782-85.) The ALJ noted Dr. Gupta prescribed Wellbutrin and referred Wireman to individual therapy, and that as of January 29, 2015, the Wellbutrin was helping, but the claimant continued to feel emotional at times. (AR 18.) Wireman also complained of memory loss, but was able to improve his memory with Ritalin, according to treatment records from Dr. Gupta's colleague, Izabelle Ostolski, PA-C, on March 12, 2015. (*Id.*)

For the reasons stated above, the Court finds the ALJ properly gave greater weight to Dr. Goldman's treatment records. (AR 19.) Dr. Goldman's findings on mental status exams (pleasant and cooperative, normal speech, congruent or appropriate affect, depressed mood, no evidence of psychosis, alert and oriented) were significantly different than Wireman's subjective descriptions of his symptoms (depressed, crying spells, irritability, "considerable difficulty functioning", angry, difficulty concentrating, forgetful, difficulty in focusing) and were inconsistent with Dr. Goldman's expert opinions pertaining to Wireman's functional limitations. (AR 18-19; *see also* AR 429, 2892, 3073, 3147, 3157, 3178-79, 3212-13, 3314-15, 3394, 3396, 4209-10, 4239-40, 4368-69.)

///

///

///

### 2. Weight of Treating Physician vs. Non-Examining Physicians

Wireman also alleges the ALJ purported to rely on opinions from two non-examining state-agency medical consultants. (ECF No. 20 at 11.) Specifically, Wireman claims the ALJ agreed only with the opinions of one of the consultants who reviewed a markedly undeveloped medical record that ended almost three years before the ALJ reached a decision and without reviewing the critical opinions from the treating psychiatrist.

Within the administrative record, an ALJ may encounter medical opinions from the three types of physicians: treating, examining, and non-examining. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. *Holohan v. Massanari*, 246 F.3d 1195, 1201-1202 (9th Cir. 2001); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally speaking, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician's opinion. *Holohan*, 246 F.3d at 1202. Moreover, a treating physician's opinion that is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in [a claimant's] case record," is entitled to controlling weight. 20 C.F.R. §§ 401.1527(c)(2), 416.927(c)(2); *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014). The ALJ is not, however, bound by the conclusions of any particular physician.

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the Court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 830-31. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. *Id.* at 830. The ALJ can "meet this burden by setting out a detailed and thorough summary of the facts and the conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1991) (citation omitted). "The

ALJ need not accept the opinion of any physician . . . if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).

The ALJ reviewed the opinions of two state agency psychological consultants, Patricia Roldan, Ph.D. and Sandip Sen, M.D. (AR 18.) The ALJ noted Dr. Roldan diagnosed Wireman with a depressive disorder causing only mild limitations in any specific area. (*Id.*) Specifically, as of December 2, 2014, Dr. Roldan found that the medical evidence in the record indicated Wireman was found to be positive for depression secondary to his medical condition, he was on anti-depressants, and the psychiatric review technique on file was non-severe. (AR 77.) In assessing the paragraph B requirements for mental impairments, Dr. Roldan found that Wireman's (1) restriction of daily living activities was mild; (2) difficulties in maintaining social functioning was mild; (3) difficulties in maintaining concentration, persistence or pace was mild; and, (4) no repeated episodes of decompensation. (AR 78.)

Likewise, the ALJ considered the opinion of Dr. Sen, who reviewed Wireman's medical record on reconsideration. (AR 88-114.) The ALJ stated Dr. Sen noted moderate limitations in social functioning and concentration, persistence and pace. (AR 18.) Dr. Sen added Wireman remained able, on a sustained basis to meet the basic mental and emotional demands of simple repetitive tasks; sustain attention and concentration for simple tasks; compete a routine workday and workweek with customary breaks; and work with others in a low-demand limited social interactive environment. (AR 18; *see also* AR 109-10.) The ALJ properly gave the assessments of both Dr. Roldan and Dr. Sen partial weight because, despite Wireman's treatment with Dr. Gupta, he was able to treat his symptoms through medication and there was very little evidence of ongoing treatment on file. (AR 18.)

The ALJ considered the four broad areas of mental functioning as set out in the disability regulations for evaluating mental disorders and the Listing of Impairments (20

15

C.F.R., Part 404, Subpart P, Appendix 1). (AR 19.)  These four areas of mental functioning are known as the "paragraph B" criteria. (*Id.*)  The ALJ found that Wireman had mild limitation in the first functional area of understanding, remembering, or applying information. (*Id.*)  The ALJ's opinion was supported by the fact that Ritalin helped Wireman manage his complaints of memory issues and the medical opinion of his treating neurologist on June 3, 2015, which indicated no more than mild memory loss, with adequate memory as of February 9, 2017. (*Id.*; see also AR 2852, 2854.)  The ALJ found that Wireman had no limitations in interacting with others. (AR 19.)  Specifically, the ALJ stated Wireman did not claim an inability to get along with others in his initial materials, and although he displayed some irritability, he was able to speak and interact appropriately. (*Id.*)  The ALJ found that Wireman had mild limitation in concentrating, persisting, or managing pace because despite some mild memory loss, most of his limitations in this area stemmed from his diabetes and neuropathy. (AR 20.)  Finally, the ALJ found that Wireman also had mild limitation in adapting or managing oneself because he was generally able to perform daily living activities, including walking short distances, shopping, basic home chores and personal care. (*Id.*)  Additionally, Wireman knew how to drive, but his doctor allegedly restricted him due to his medical condition. (*Id.*)  Wireman remained alert and oriented throughout the period at issue.

Taking into consideration all the medical evidence of record, including the testimony heard at the administrative hearing, the court finds the ALJ fully developed the record and properly weighed the medical opinions of the treating physician and the non-examining physicians, finding that Wireman's medically determinable mental impairments of depression and anxiety did not cause more than minimal limitation in Wireman's ability to perform basic mental work activities and are therefore non-severe.

///

///

B. <u>The ALJ Properly Evaluated Wireman's Subjective Allegations.</u>

Finally, Wireman argues the ALJ erred by failing to properly evaluate his subjective allegations by making no similar finding with respect to Wireman's other symptoms due to depression and anxiety and failing to refer to any evidence that Wireman's depression had a significant and sustained response to his treatment. (ECF No. 20 at 14-16.) Wireman notes the depression and anxiety impairments are the ones that the ALJ conceded are medically determinable albeit *de minimis*. (AR 18.)[4]

In social security proceedings, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.908. The effects of all symptoms must be evaluated based on a medically determinable impairment which can be shown to be the cause of the symptoms. 20 C.F.R. § 416.929. Where non-severe impairments exist, these impairments must be considered in combination at step two to determine if, together, they have more than a minimal effect

---

[4] Wireman is correct that the Commissioner spent multiple pages in the brief arguing why Wireman's allegations regarding his physical impairments were supported by the record. However, Wireman does not dispute any of the findings by the ALJ regarding his physical impairments. Rather, the case concerns only the ALJ's findings regarding the severity of Wireman's mental conditions. (ECF No. 26 at 4.) Wireman alleges that because the Commissioner did not respond to any of his arguments that the ALJ failed to consider his subjective statements in evaluating the severity of his mental impairments, the Commissioner waived argument on these issues. (*Id.*) However, after review of the administrative record, the court finds that the only subjective statements made pertaining Wireman's mental impairments were included in the treatment records of Dr. Goldman and Dr. Gupta, all of which the ALJ spent considerable time summarizing and addressing during the step two analysis. (AR17-20.) Moreover, none of Wireman's subjective testimony during either of the two hearings before the ALJ involved any type of allegations related to depression or anxiety; the testimony during both hearings specifically dealt with Wireman's physical impairments and associated limitations. (*See* AR 39-53, 54-70.) Thus, the Court rejects Wireman's claim that the Commissioner waived any argument on these issues.

on a claimant's ability to perform work activities. *Id.* If impairments in combination have a significant effect on a claimant's ability to do basic work activities, they must be considered throughout the sequential evaluation process. *Id.* However, preparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary. *Bayliss v. Barnhart,* 427 F.3d 1211, 1217 (9th Cir. 2005). Thus, the issue at step two is whether the ALJ had substantial evidence to find that the medical evidence clearly established the claimant did not have a medically severe impairment or combination of impairments. *Webb v. Barnhart,* 433 F.3d 683, 687 (9th Cir.2005). A claimant's credibility becomes important at the stage where the ALJ assesses the claimant's RFC. *Tonapetyan v. Halter,* 242 F.3d 1144, 1147 (9th Cir. 2001).

Here, the ALJ's finding that Wireman's medically determinable impairments of depression and anxiety considered singly and in combination, did not cause more than minimal limitation in his ability to perform basic mental work activities. (AR 18.) Specifically, the ALJ found that Wireman was able to treat his symptoms through medication, specifically Wellbutrin, Ritalin and Trazodone. (AR 18-19.) Further, the ALJ noted that Wireman's brain MRIs were uniformly unremarkable, ruling out a cognitive aspect. (AR 23.) Thus, for these reasons, and the reasons discussed above, the Court finds the ALJ provided specific, clear, and convincing reasons for his findings pertaining to Wireman's minimal limitations regarding depression and anxiety.

**V.  CONCLUSION**

Having reviewed the Administrative Record as a whole, and weighing the evidence that supports and detracts from the Commissioner's conclusion, the Court finds the ALJ and Appeals Council's decision was supported by substantial evidence. Therefore, the Court recommends Wireman's motion to remand (ECF No. 20) be denied, and the Commissioner's cross-motion to affirm (ECF No. 23) be granted.

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Local Rule IB 3-2, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## VI. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Wireman's motion for remand (ECF No. 20) be **DENIED**, and the Commissioner's cross-motion to affirm (ECF No. 23) be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that the Clerk **ENTER JUDGMENT** and close this case.

**DATED**: January 30, 2020.

_____
**UNITED STATES MAGISTRATE JUDGE**